PDV Sweeny v. ConocoPhilips. I've just been asked to remind counsel to speak into the microphone because otherwise we won't have a recording of your argument. So just make sure you put it in front of you. Good morning, Your Honors. Joseph Pizzurro, Curtis Mulley Prevot, Colton Mosley for PDV Sweeny and PDV Texas. Your Honors, this case involves the enforcement by the arbitral tribunal of a contractual clause which effectively resulted in the forfeiture of a joint venture interest which the Conoco parties admitted was worth between $350 and $540 million based on a delay in payment of contract damages of $6.9 million. We contend that that is a penalty, that it is unenforceable as a matter of public policy of the United States, of all 50 states in the United States, and of the United States government, the federal government. The district court The call option price was zero? The call option price was zero, Your Honor, yes. And that was because the parties had received $1.1 billion in dividends, right? The parties had received in excess of, in dividends, in returns on their investment, in excess of the amount that they had originally invested. Both parties had. So it was, I mean, it was a profitable joint venture for both sides? Indeed, it was profitable for both, Your Honor. And that joint venture continued profitability of the half interest that was taken under the call option went to Conoco. So that continued profitability was for the benefit now simply of Conoco. That was taken from the PDB parties. We have an arbitrator's construction of this provision as a termination provision rather than a penalty provision. Tell me what you think our ability to review that construction of the contract is. Well, Your Honor, to put a finer point on it, the tribunal did not find that because it was a termination provision, they did not find it was not a penalty. What the tribunal said was only a liquidated damages provision can constitute a penalty. This is a termination provision, and, therefore, because it is not a liquidated damages provision, that ends our analysis. So they did not go on to analyze whether regardless of the label, which is the law, regardless of the label that the parties have chosen, you still have to examine the effect of the clause, whether it's a termination clause, whether it's called an option, whether it's called liquidated damages is irrelevant. So the tribunal did not do the analysis that the tribunal was obligated to do. Did the tribunal specifically say it's not just a matter of the label and they looked at the substance of the provisions? But they didn't do the analysis, Your Honor. They said we stop our analysis when we determine this is not liquidated damages, but in effect is a termination clause. And I point out that there's an internal inconsistency in the tribunal's own reasoning, because the tribunal goes on to determine that, in fact, the call option is a remedy. But we do not review the reasoning or rationales of the arbitral panel, right? That's correct, Your Honor. So we need to find an error of law or something beyond the conclusion that the arbitrator may have made an error of law. In fact, we can only consider whether the award itself violates public policy. That's correct, Your Honor. All right. So we have what is it about the arbitral award construed as a termination provision, the enforcement of the party's termination provision of the contract that violates public policy? Well, Your Honor, an arbitrator cannot insulate his, their decision from the court's a public policy by saying it's not a penalty. The ultimate ---- I'm sorry. I just want to make sure I have the thing lined up. I understand there are two things that seem to me to be going on at the same time. One has to do with whether it was a penalty. What did the arbitrator decide? Was it right under the law? The other one is the forum state's most basic notions of morality and justice. Now, are we, do we have to find the second one in order to rule in your favor, that it's serious public policy? Or would it be enough if we said, gee, that was kind of a dumb mistake, a mistake of law, but it certainly doesn't rise to the level of some kind of profound notion of fairness. I understand, Your Honor. What are we looking at? What the court is to look at is whether or not the enforcement of this contractual provision is a violation of public policy. So the arbitrators have decided ---- You say public policy. Yes. You mean public policy in the sense in which it's used with respect to international arbitration, which is serious public policy. I mean, public policy, you know, that's the first thing you learn to throw at a question in law school. If you don't know what the law is, you say it's against public policy. I do it every day. But the question is, what does that mean against public policy in this context? In this context, Your Honor, it was defined by the Supreme Court in the W.R. Gray's case. And the Supreme Court said that public policy is well-defined and dominant and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. So applying the Supreme Court test, which is an objective test. It's not a subjective test of basic notions of morality and justice. It is an objective test. We have presented authority which shows that the policy, the public policy against the enforcement of contractual penalties exists in all 50 jurisdictions in the United States, State court jurisdictions in the United States. It existed in the Federal ---- It suggests that every time there's any law that all 50 states have adopted, that we have a matter of public policy. And I don't understand that to be how the law generally deals with it. I mean, there is this basic sense that it has to be repugnant to notions of what is decent and just in the state where the enforcement is sought. We said that just recently in our Corporacion Mexicana decision. Yes, Your Honor. So what is it about this provision that is repugnant to fundamental notions of what's decent and just in New York State? If you permit the enforcement of a contractual clause that results in a taking of value, whether that's a forfeiture of an interest or payment of money, which is between 50 and 70 times. In fact, it's far greater than that because let's remember, it's not a failure to pay the $6.9 million that triggered the call option. It was a 91-day delay because immediately when the PDV parties got the letter from ConocoPhillips, they said, here's the money. And ConocoPhillips said, we don't want the money. We want your interest. We want the $540 million interest. We're not interested in the $6.9 million. So that is what has to offend public policy. Let me posit an example. Because the court below held that as a matter of law, a contractual penalty can never rise to the level of a violation of public policy. We think this is a case in which it can, but let me posit a hypothetical. Let's say you have a consumer, you have a credit card contract that says if you fail to pay $100 worth of consumer debt within 40 days, you forfeit your home. But I don't think that we've seen cases like that. The difference, though, also is that this is a joint venture, and the parties have pretty much decided that if they can't count on each other to abide by the terms of the joint venture, it will be terminated not by just splitting the venture, but by one side then forfeiting the interest to the other. Now, I am not sure that you have pointed us to anything in New York law that says that kind of provision to terminate a joint venture offends public policy. But maybe I overlooked something. Help us out. Well, Your Honor, first of all, it's not quite correct that the exercise of the call option resulted in a termination of the joint venture, because the joint venture No, no, no. As a matter of fact, the taking of the interest did not affect the obligation of the PDV parties of PDVSA and PDVSA Petroleum to supply crude oil to the refinery, which they continue to do and continue to do to this day. And the parties recognized that the major contribution to the joint venture on the PDVSA side was the supply of crude oil. And so to say that the venture has been terminated is a bit of a fiction, because all of the obligations and contributions that the PDVSA parties went into the venture giving Now you're redefining what terminates the obligation. The contract says what terminates it, and even the delay, according to the arbitrator, is enough to terminate. I mean, we can't rewrite your contract for you. Well, what it terminates, Your Honor, it terminates the venture in the sense that the joint venture interest, the ability to participate in the profits of the venture, have been forfeit, have been taken. But the continuation of the business, as it were, goes on, and the supply of the benefit to ConocoPhillips from the PDVSA side in the form of delivery of crude oil continues and continues today. Thank you, Your Honor. Let's hear from your adversary. Good morning, Your Honor. May it please the Court, Elliot Friedman for the appellees. This Court has made clear time and again the highly deferential standard of review that's applied to arbitration awards. In keeping with that standard of review, the public policy defense itself is narrowly construed and is applied in light of the presumption in favor of upholding arbitration awards. To overcome that presumption, the award that is sought to be impugned must not just violate any policy. It must violate a policy that strikes at the very heart of what is basic and just, the notions of morality and justice of this nation. Appellants invoke the language of public policy, but their claim is really that the tribunal got it wrong, that the tribunal erred when it construed this contractual provision as a termination provision rather than a liquidated damages clause. But an error of law does not sound in public policy. For gross misapplications of law, you have the manifest disregard standard. That hasn't been alleged here. Which is just manifest, just fill out the sentence of law. The manifest disregard standard, there is a governing principle of law that everyone knows applies, but the tribunal ignores it, refuses to apply it. It's an intentional misapplication of law. The criteria are very strict. The criteria are very strict, and that's from your decision in Stolt-Nielsen. The criteria are very strict because the overarching policy here is that we're not going to interfere with the contractual interpretation of an arbitration tribunal. We're not going to redo the analysis. The parties bargain for their dispute to be resolved in arbitration. The argument is the forfeiture of, you know, a $500 million interest in a joint venture because of a failure to pay $6 million in damages does violate notions of fairness and justice, et cetera. And why doesn't it? We accept that there are laws against forfeiture. There are laws against penalty clauses. But to qualify under the public policy standard in the context of arbitration law, to qualify under that standard, the violation must touch upon our notions of morality and justice, not just violate any law. Because if that were true, then what your task would be every time an arbitration award came before you would be to analyze that award against every potentially applicable law. I think your adversary, though, is suggesting that when one considers what their failure was and one considers what the consequences are, one gasps. That's the argument. Tell me why that doesn't then raise the question of whether we've got a public policy concern that your client is basically getting so much more than anyone would think was warranted in these circumstances. I don't mean to step on her question. I mean, in answering the question, would you include in the answer a statement as to what it is you think maybe was wrong, but also what exactly did your adversary not do? What was the defalcation that was involved here? How serious was it? No, I'm sorry. Now answer both. I will try to answer both. The default here started with a nonpayment of money but continued with a complete ignoring of our request to continue to pay. What it got at was a fundamental breakdown in the relationship between the parties here which undermined the basis of trust that underlay this joint venture. And the parties ex ante decided that for events that interfere with our ability to continue this joint venture, we are going to unwind it. And that's the critical thing is that we are dealing with the unwinding of a joint venture, not just, you know, failure to pay on a home, failure to pay on for goods received. It's the fact that the parties are tied together, and you're saying that the breach of trust meant that they ought to be able to untie themselves. Yes, and that was the tribunal's finding. Now, I will preface that by saying these are issues of merits that are not before this Court. The proper analysis, as Your Honor noted, it was set out in MISCO, in Eastern Associated Coal, in Grace, and by your Court in Mutual Marine, is you take the arbitrator's conclusions as you find them. And those conclusions cannot be undone by U.S. Court because we bargain for arbitration. So when you take the arbitrator's conclusions as you find them, you then ask the public policy question. You then say, is this contract as interpreted by the tribunal? Is this contract as interpreted by the tribunal violative of public policy? And here we have a contract that is interpreted by the tribunal as a termination provision, not a liquidated damages clause. So when we start from that position, that we have a contract that embodies a termination provision, and then we ask the public policy question, this appeal resolves itself because there's no allegation that a termination provision violates public policy. To get underneath that, we have to redo the analysis of Judge Sofair and the other tribunal members. And that's not something that we can do here. The parties bargain for arbitration, and that is what they receive. Just a few words on the most basic notions of morality and justice standard. That standard is important because without it, you will have every disappointed party to an arbitration coming to your court and saying, my award violated a law.  It has to violate most basic principles of morality and justice. It was defined by this court in Darussa in 1996 as something that is egregious in nature and particularly harmful to society. Things like awards that jeopardize public health and safety, awards that contravene the government's foreign policy priorities, awards, for example, that relates to contracts of servitude. These are the types of things that touch upon our most basic notions of morality and justice. A contractual provision in a commercial contract between two highly sophisticated commercial parties doesn't touch upon those issues. Thank you. Thank you. I don't think you reserved any rebuttals, so we'll take this case under advisement. Thank you both.